12979

BRANCHVILLE MOTOR CO. *ET AL.* v. ADDEN *ET AL.*

(155 S. E., 277)

December, 1929.

*Messrs. Kearse & Kearse,* for appellants,

*Messrs. Brantley & Zeigler, Lide & Felder* and *Wm. C. Wolfe,* for respondents,

September 30, 1930.

The opinion of the Court was delivered by Mr. JUSTICE COTHRAN.

There were two demurrers, by separate defendants, to the complaint herein, but it will be convenient to treat them as one, as they present the same question of law, namely, whether the remedy provided by the Act of 1929, 36 Stat., 199, for the enforcement of the statutory liability of stockholders of banks to depositors, is exclusive of the previously existing direct remedy of depositors against the stockholders.

The Planters' Bank of Orangeburg closed its doors on November 26, 1929, and, by action of the directors, was placed in the hands of the State Bank Examiner, under Section 3981, Civ. Code of 1922, for a period not exceeding 30 days.

On the very next day, November 27th, the present action was instituted by two depositors of the bank, having deposits of $1,100.00 and $700.00, respectively, against 122

of the stockholders, the complaint alleging the insolvency of the bank, practically a creditors' bill in equity, asking for the appointment of a receiver and a distribution of the funds to be realized from the liability of the stockholders under the Constitution, Article 9, § 18, and Section 3998, Vol. 3, Code of 1922.

It will be observed that the action was commenced before the bank examiner could take any steps looking to a liquidation of the bank under Sections 3981 or 3985, or under the Act of 1929, 36 Stat., 199.

The defendants demurred to the complaint upon the ground, mainly, that an action against stockholders of an insolvent bank can be maintained only by a receiver appointed under the Act of 1929; in other words, that the remedy provided in that Act, superseded the remedy that the depositors theretofore had.

The demurrers were sustained by his Honor, Judge Mann, in a decree dated December 17, 1929, which will be reported.* From it the plaintiffs have appealed.

The controlling enquiry is as to the legislative intent in passing the Act of 1929. A natural and safe guide to that intent is the statutory and judicial status of the subject at the time of its enactment.

The Constitution, Article 9, § 18, provides: "The stockholders of all insolvent corporations shall be individually liable to the creditors thereof only to the extent of the amount remaining due to the corporation upon the stock owned by them: *Provided,* That stockholders in banks or banking institutions shall be liable to depositors therein in a sum equal in amount to their stock over and above the face value of the same."

This section was (needlessly) enacted into statute law; that part relating to corporations other than banking corporations, in Section 4351, and that relating to banking corporations in Section 3998 of Vol. 3, Code 1922; the latter being: "The stockholders of all insolvent banks and banking

---

*Reported in dissenting opinion of Mr. Justice Carter.

institutions, whether heretofore or hereafter incorporated under Act of Assembly of this state, either general or special, shall be individually liable to the creditors thereof, other than depositors, only to the extent of the amount remaining due to the corporation upon the stock owned by them: *Provided,* That stockholders in all such banks and banking institutions shall be liable to depositors therein in a sum equal in amount to their stock over and above the face value of the same."

Exactly what the expression *"in a sum equal in amount to their stock over and above the face value of the same"* means, it is difficult to divine; but the general acceptation appears to have been that, if one owns one share, par value $100.00, his statutory liability is $100.00, and so on.

In an early case, *Hall v. Klinck,* 25 S. C., 352, 60 Am. Rep., 505, under a somewhat similar statutory provision, it was held that any creditor might bring his individual action at law against any stockholder. In the latter case of *Parker v. Bank,* 53 S. C., 583, 31 S. E., 673, 674, 69 Am. Rep., 888, it was said that that case *(Hall v. Klinck)* was based upon the peculiar statute therein involved. Applied to the facts in the *Parker case,* the Court declined to take that view of the provision in the Constitution of 1868, saying: "To leave each creditor to single out for suit one or more stockholders at law would entail a multiplicity of suits, and result in an unequal distribution of the assets for creditors, all of which is prevented by entertaining this proceeding in equity."

The *Parker case* involved a consideration of a provision in the Constitution of 1868, which went further than that of 1895, in that creditors, whether general creditors or depositors, were entitled to participate in the liability of the stockholders. It was there held, quoting syllabus: "The Court of Equity has jurisdiction of an action by a creditor of an insolvent bank, who sues for himself and all other creditors, to compel payment by stockholders of statutory liability. * * *"

In several cases since the decision of the *Parker case*, it has been consistently recognized that under the Constitution of 1895 one or more depositors may bring an action assimilated to a creditors' bill in equity, against all of the stockholders for the purpose of realizing from them their statutory liability and of distributing it, as would be done in a creditors' bill proceeding among the depositors entitled thereto.

In several succeeding cases it has been held that "the liability of stockholders to depositors, under the Constitution and statute, is not an asset of the bank, but is the basis of an individual, personal, joint right in the depositors, with which the corporation or its receiver or its board of liquidating trustees have absolutely nothing to do." *Johnson v. Adams,* 138 S. C., 409; 136 S. E., 885, 887; *Ford v. Sauls,* 138 S. C., 426, 136 S. E., 888; *Bradley v. Aimar,* 140 S. C., 14, 138 S. E., 401; *Ex parte Fant,* 147 S. C., 167, 145 S. E., 34; *State v. Bank of Clio,* 129 S. C., 109, 123 S. E., 773; *Gary v. Matthews,* 148 S. C., 125, 145 S. E., 702.

Thus stood the constitutional and statutory provisions, relating to the liability of stockholders in banking institutions, and the judicial decisions at the time of the enactment of the Act of 1929. The constitutional provisions of course have not been changed by statute; the liability remains as it was therein established.

Neither in the Constitution nor in the statutory enactment of Section 3998 was there any provision indicating or providing for a remedy by which the depositors may have enforced the liability of the stockholders.

Under these circumstances this Court has held as stated, that the proper remedy was a suit in the nature of a creditors' bill in equity; a remedy which has not infrequently been invoked and sustained; the Court stating at the same time that the remedy could be invoked only by depositors; that the liability was personal to them and no part of the assets of the estate in the hands of a receiver.

This Court in more than one instance has entertained, if not expressed, the regret that the law was such as to require separate proceedings by the receiver and the depositors; that the matters of the administration of the receivership and the collection and distribution of the stockholders' liability were so closely related as to make it greatly expedient that both should be settled in the same general proceeding; that the method which obtains in the receiverships of national banks was greatly to be preferred.

We cannot but think that the same considerations moved the General Assembly to enact the Act of 1929.

Neither the statute, Section 3998, nor the Act of 1929 confers upon the depositor an enforceable right; that is accomplished by the Constitution, to which the legislation adds nothing. Until the Act of 1929 was passed the depositor looked to the inexhaustible fountain of equity jurisprudence for his remedy, which, as we have seen, was a suit in the nature of a creditors' bill in equity. The equitable principles established in England have been here adopted as a part of the common law, and applied to the instance in point upon the ground that, where there is a right, there must be a remedy.

It must be conceded that, where there is an existing established right, and an existing remedy, either statutory or at common law, a new statute, recognizing the right and providing a new remedy, will not be held to have superseded the existing remedy unless:

1. There is in the new Act an explicit repeal of the old remedy; or

2. The enforcement of the new remedy necessarily presents a situation incompatible with the continued existence of the old remedy; or

3. It clearly appears that by the new Act the Legislature intended to take over the entire field of operations, to the necessary exclusion of the old remedy.

While there is, in the Act of 1929, no explicit negation of the continued existence of the old equitable remedy, from a consideration of that Act, in view of the then statutory and judicial status of the subject it clearly appears that the Legislature intended to radically change the existing method of the administration of insolvent banks, to take over the entire field of operations and to provide a uniform, fair, just, and efficient method of administration by one person, duly elected by the parties most vitally interested and appointed by the Court; that when so appointed such person, duly bonded, under the supervision of the Court as an officer of the Court, should have entire control of all phases of the administration to the exclusion of all other persons.

The Act of 1929 makes radical changes in the existing method of the administration of insolvent banks. The changes are so radical as to demonstrate that the Legislature intended, by the Act, to control the entire field of operations, except in a few particulars that were provided for in Sections 3981 and 3985 and were not affected by the Act.

Under these Sections there were two distinct statutory proceedings which justified the interposition of the bank examiner in the management of the affairs of a bank. They arose from different conditions and affected different results.

Section 3981 justified the interposition of the examiner upon the request of a majority of the board of directors. It became his duty then "to take and retain sole possesion and control of the property and business of such corporation for not exceeding thirty days"; within that time the corporation is given the alternative of resuming business, or, with the consent of the examiner, of applying to the Court for an order "authorizing said corporation to liquidate its affairs under the sole supervision and control of the examiner and subject to the order of the said Court."

The Act of 1929 recognizes the right of the examiner to take over the bank under Section 3981, and provides that,

if it be decided thereafter to liquidate the bank, the examiner shall notify the depositors and unsecured creditors that the bank is to be liquidated, and shall notify them of a meeting called "for the purpose of electing a receiver and otherwise making provision for the liquidation of the affairs of the said bank." The Act does not prescribe how the matter of liquidation is to be "decided"; we assume that that part of Section 3981 referring to liquidation was intended to remain of force. The Act then provides for the election and the appointment of the receiver by the Court.

As was held in the case of *Browne v. Hammett,* 133 S. C., 446, 131 S. E., 612, 614, under Section 3981: "* * * While the title to the assets remains nominally in the corporation, the right to the possession of them and the right of disposition is vested in the board of directors as liquidating trustees."

It seems impossible to reconcile this condition with the appointment of a receiver under the Act of 1929 under which necessarily the right to the possession of the assets and the right of disposition is vested in the receiver.

Section 3985 provides quite a different proceeding. Under it the interposition of the examiner was justified when, upon an examination of the bank, he found that it was insolvent or being dishonestly managed. He was directed then, upon consultation with the State Treasurer and after obtaining an order from the Circuit Judge to that effect, upon due notice, to take and retain possession of all the assets and property of the bank, and then to apply to the Court to have either himself or someone else appointed ·receiver to wind up and settle the affairs of the bank.

It seems impossible to reconcile this condition with the method provided for in the Act of 1929 for the election and appointment of a receiver, which is made applicable to Section 3985.

As a matter of simple justice and right, contemplating the entrapment into which the innocent stockholder has

fallen, the loss of all that he has paid for his stock, and the liability to an assessment of 100 per cent. upon its par value, he should not be required to respond to that assessment until it shall have been ascertained that the necessity, and the extent of it, exists as a supplement to the assets of the broken bank. No one is in a better position than the receiver to ascertain and declare this necessity.

Under the law as it stood at the time of the passage of the Act of 1929, the depositors of an insolvent bank were not required to make a showing of this necessity; they could have brought suit at once, upon the insolvency of the bank. Regardless of this necessity, the stockholders would have been required to pay their assessments and wait for a refund in the event that they had paid in more than was necessary. *Buist v. Williams,* 81 S. C., 495, 62 S. E., 859; *Bird & Co. v. Calvert,* 22 S. C., 292; *Parker v. Bank,* 53 S. C., 583, 31 S. E., 673, 69 Am. St. Rep., 888.

The Act of 1929 changed this, and yields to the stockholder the just right of withholding his assessment until the receiver shall have ascertained and declared the necessity and made demand upon him. This is a clear instance of inconsistency between the law as it formerly was and the Act of 1929.

In the case of *Buist v. Williams,* 81 S. C., 495, 62 S. E., 859, 861, it was held: "Hence, when a bank becomes insolvent, the creditors have two remedies which they may enforce simultaneously: They may sue the bank and have a receiver appointed for the collection of the assets and application of them to the debts, and at the same time sue the stockholders on their liability." (The Court manifestly referred to depositors, a class of creditors, and not to general creditors.)

This is another instance of inconsistency between the law as it then stood and the Act of 1929. That Act makes particular provision for the appointment of a receiver; its title, in part, is: "An Act to Provide the Manner in Which Receivers of Closed Banks are to be Chosen." The Act requires

the bank examiner to give notice to the depositors and unsecured creditors that the bank is to be liquidated; that a meeting is appointed for the purpose of electing a receiver; the appointment by the Court of such person as receiver, who shall give bond, etc.

Can it be urged that, in the face of this explicit direction, the depositors could move for the appointment of a receiver, as they could have done under the *Buist v. Williams case?* Could there be two receivers, separately appointed, of the same bank? If the Act is exclusive in this respect, why is it not so in reference to the stockholders' liability? The one presents an instance of a pre-existing remedy, withdrawn by the Act, as much so as the other.

Moreover, as was actually done in this case, the action by the depositors upon the stockholders' liability could be instituted before the meeting of creditors and depositors could be held under the Act of 1929. Carried to a successful termination a receiver would be appointed to collect the stock holders' liability, and, like Othello, it could be said of the receiver elected and appointed by the Court under the Act of 1929, so far as the stockholders' liability is concerned: His "occupation's gone."

The contention of the appellant is that the remedy afforded by the Act of 1929 is cumulative, not alternative, of the former equitable remedy.

Surely the Legislature did not intend after the passage of the Act of 1929, to leave one right (enforcement of the stockholders' liability) to be enforced by two separate and distinct persons, in either of two separate and distinct actions, one a bill in equity by the depositors, the other an action at law by the receiver. To so hold would be to render Section 6 nugatory and leave the enforcement of the stockholders' liability in the chaotic and unsatisfactory condition it was before the Act.

On the contrary, the conclusion is inescapable that the Legislature intended to adopt a remedial statute to provide

an efficient method of liquidating defunct banks for the best interest of depositors and creditors, to give to the receiver a right where none existed before, and to make the remedy afforded by Section 6 exclusive.

For this Court so to hold will be to bring order out of chaos and bring about "a just, equitable and beneficial operation of the law."

The rule by which it is determined whether a new remedy for a pre-existing right is exclusive, is thus very clearly expressed in 1 C. J., 990: "Where a statute providing a remedy does not create a new right, but merely provides a new remedy for a pre-existing right, it is ordinarily held that such remedy is not exclusive but merely cumulative, whether the right is one previously enforceable at common law or by virtue of some other statute or constitutional provision, and whether it was previously enforceable at law or in equity, and notwithstanding the new remedy may be preferable to or more efficient than the old. A new remedy will, however, be held to be exclusive if it appears that the Legislature intended to abolish the old remedy and substitute the new, although there is no express provision to this effect."

In *Young v Kansas Cit.y R. Co.*, 33 Mo. App., 509, the Court said: "There are three ways in which this may be done: First, by a repealing clause; second, by such repugnance that the two laws may not, in reason, both stand; third, by a revision of the whole subject-matter of the former law which is evidently intended as a substitute for it."

It may be added, what appears to be manifest without such a statement, that the receiver appointed under the Act of 1929 will be subject to the orders of the Court; and if, upon application of a depositor it should be made to appear that the receiver is neglectful of the duty he owes to the depositors in the matter of enforcing the stockholders' liability, the Court may pass the necessary orders for their protection, even to the extent of removing the receiver and substituting another. It is conceivable that circumstances

might arise which would justify the Court in permitting a creditors' bill by the depositors against the stockholders for their protection, in the event that relief could not be had through the receiver.

The judgment of this Court is that the decree of the Circuit Judge be affirmed and the complaint dismissed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and STABLER concur.

MR. JUSTICE CARTER (dissenting) : This action by the plaintiffs as depositors of the Planters' Bank, an insolvent banking corporation, with its principal place of business at Orangeburg, S. C., on behalf of themselves and all other depositors of the said bank, against the defendants, as stockholders of the said bank, was commenced in the Court of Common Pleas for Orangeburg County, November 27, 1929, for the purpose of recovering the constitutional and statutory liability of the said stockholders, amounting to $100,000.00. Following the usual practice the plaintiffs procured an order from the Court requiring all depositors to prove their claims in this action, so as to avoid a multiplicity of suits, and enjoining all depositors from instituting separate actions, which order was issued November 27, 1929, by Hon. C. C. Featherstone, Judge presiding in the first judicial circuit. The defendants demurred to the complaint, upon grounds we shall hereinafter refer to. The case came before Judge M. M. Mann on a hearing of the demurrers December 17, 1929, who issued an order sustaining the same. From the order of his Honor, Judge Mann, sustaining the demurrers, pursuant to due notice, the plaintiffs have appealed to this Court.

The transcript of record discloses that two demurrers were served, No. 1 by one set of the defendants, and No. 2 by another set of the defendants, reading as follows:

### DEMURRER No. 1

"The defendants served in this action with summons and complaint therein, reserving the right to file and answer

herein if so advised at a later time, demur to the complaint herein upon the following ground or grounds, to wit:

"The plaintiffs have no legal right or capacity to bring or maintain this suit, because only the receiver of the Planters Bank within such limitations is authorized to. bring such action or actions under the statutes in such case made and provided, which statutes regulate the procedure relative to such actions.

"Wherefore, said defendants demand judgment that the complaint be dismissed with costs.

"December 4th, 1929."

### DEMURRER NO. 2

"The defendants, Joseph McNamara, Thomas R. Smith and Mrs. Annie L. Etheredge, together with other defendants represented by us who have been served in this action, reserving the right to answer herein at a later time with permission of the Court, demur to the complaint herein upon the following grounds:

"1. That the above-entitled action has been prematurely brought in that at the time of its commencement the bank had just gone into the hands of the State Bank Examiner under the provisions of the laws of this State and the condition of the bank had not yet been determined, and until such insolvency had been determined no action would lie against the stockholders on account of their liability as such.

"2. That under the Act of the General Assembly of the State of South Carolina, approved March 16th, 1929, it was provided that a receiver should be appointed to liquidate the assets of any closed bank and that such receiver should notify the stockholders of their liability and demand that the same be paid to him, and that no receiver has been appointed for said bank and no demand has been made, as required by law.

"3. That under the said Act of the General Assembly the receiver alone is authorized to bring suit against the stock-

holders, as provided therein, and that plaintiffs have no right nor authority thereunder to maintain this action.

"December 14th, 1929."

The order appealed from is as follows:

## ORDER OF JUDGE MANN

"This matter comes before me upon a demurrer to the complaint in this action. The complaint was brought by the plaintiffs against the stockholders of the Planters Bank of Orangeburg, S. C., on their liability as stockholders in the said bank. It appears that the directors of the Planters Bank closed the doors of that institution and placed it in the hands of the State Bank Examiner for the period of thirty days, under Section 3981 of the Code. This was done on November 26th, 1929. On the next day the plaintiffs brought this action against the stockholders of the bank asking for judgment against each stockholder on his statutory liability. A number of the defendants now come forward and demur to this complaint under the Act of the General Assembly approved the 16th day of March, 1929, the same being Act No. 175, and found in the Acts of South Carolina for 1929, on page 199. Two separate demurrers were filed to the complaint, one by certain defendants represented by Brantley & Zeigler, attorneys, and the other by certain defendants represented by Lide & Felder, attorneys.

"Under the Act of 1929 these defendants contend that this suit is prematurely brought, and that a suit of this kind can be brought only under the provisions of this Act, and only by the permanent receiver of the bank appointed in the manner specified in the said Act, and that a suit of this character cannot be brought by the depositors. Against these contentions of the defendants the plaintiffs urge that the Act does not give the receiver appointed under its provisions the exclusive right to sue the stockholders, but that the right thus given to the receiver in this Act is merely cumulative and additional and does not take away the remedy which the de-

positors had before the passage of the Act. In other words, the other by the receiver appointed under the Act.

the plaintiffs contend that since the passage of this Act there are two methods by which suit may be brought against the stockholders on their liability : one by the depositors themselves, just as could be done before the Act was passed; and

"I believe that the Court should take notice of the fact that the General Assembly, by the passage of the Act of 1929, intended to reform, simplify and economize the procedure to be followed in the liquidation of insolvent banks. And with that aim in view, it sought to place the entire process of liquidation in the hands of one person. The Act provides that this person, the receiver, shall be appointed under conditions that tend to safeguard the interests of the depositors and the creditors of the bank. It may be that under some of the circumstances suggested by counsel for the plaintiffs in his argument, that a depositor might still have the right to bring a suit as this, or to force an action on the part of the receiver in bringing such a suit, should the receiver be derelict in his duties in that regard to the manifest injury of the depositors. But none of these conditions appear in this case at this time and it should not be assumed that such will occur. The permanent receiver has not yet been appointed. This must be done at a meeting to be called by the Bank Examiner for that purpose after ten days' notice to the depositors and creditors. It must be taken for granted at this stage of the case that the receiver who is appointed will fully and faithfully discharge his duties in the interest of the depositors, creditors and all other interested parties. And hence, in my judgment there is no occasion for this suit at this time and the same has been prematurely brought.

"It is therefore ordered that the demurrers to the complaint in this case be and the same are hereby sustained.

"Dated : December 17th, 1929."

The main question presented by the appeal may be stated thus : Since the passage and approval of the Act of the Legis-

lature, known as Act No. 175 of the Acts of South Carolina, for 1929, page 199, have the depositors of insolvent banks the right to institute and maintain in their name actions against the stockholders of such banks to recover the constitutional and statutory liability of said stockholders? His Honor, Judge Mann, by his order issued in the cause, in passing upon the demurrers, held, in effect, that by the Act of 1929, in question here, the right of action against the stockholders of an insolvent bank for the recovery of the constitutional and statutory liability for the benefit of the depositors was placed exclusively in the receiver of such bank, and that the depositors cannot maintain an action for such purpose, unless the duly appointed receiver has refused to institute such action or should be "derelict in his duties in that regard to the manifest injury of the depositors." His Honor further stated that such condition did not exist in the case at bar; that there was no occassion for the suit; and that the action was prematurely brought.

The directors of the bank in question closed its doors and placed it in the hands of the State Bank Examiner, under Section 3981 of the Civil Code, 1922. Soon thereafter this suit was commenced. The plaintiffs, depositors of the bank, allege in their complaint that the bank refused to pay their checks drawn on the bank for the amount of their deposits, and, further, allege the insolvency of the bank. For the purpose of the consideration of the demurrers, the allegations are presumed to be true, and the insolvency of the bank admitted. Therefore, according to the general practice governing such matters, as recognized by the Court, the depositors had the right to commence this action immediately for the purpose stated, unless prevented from doing so by the 1929 Act.

The liability of the stockholders to depositors in a bank is not a common-law liability, but is a liability fixed by the Constitution of 1895, Art. 9, § 18 in the following language· "The stockholders of all insolvent corporations shall be in-

dividually liable to the creditors thereof only to the extent of the amount remaining due to the corporation upon the stock owned by them: *Provided,* That stockholders in banks or banking institutions shall be liable to depositors therein in a sum equal in amount to their stock over and above the face value of the same."

This provision of the Constitution was later formulated as a statutory enactment (see Section 3998, Vol. 3, Code 1922), but the statutory enactment did not fix any greater or additional liability against the stockholders of a bank, nor did it provide any remedy or procedure for the depositors to pursue in order to collect for such liability against the stockholders. The liability of the stockholders of a bank to depositors was fixed by the provision in the Constitution to which reference has been made, and the remedy pursued by the depositors against the stockholders to collect for such liability is a remedy afforded by the common law of force in this state, and such remedy or right of action, which the Courts of this state have recognized as existing in favor of the depositors against the stockholders of an insolvent bank, since the adoption of the Constitution of 1895, is of force at this time, unless destroyed by the provisions of the Act of 1929 in question here. In my opinion, the Act of 1929 does not destroy such remedy and right of action, but that the depositors still have the right to institute and maintain an action against the stockholders of an insolvent bank for said liability; that the remedy provided in the said Act of 1929 for collecting this liability, by clothing the receiver with authority to institute an action against the stockholders, under certain conditions, is cumulative and not exclusive. The part of the said Act of 1929 pertinent here reads as follows:

*"Stockholders' Liability.*—That any receiver appointed to liquidate the assets of any closed State bank shall, under the authority of this Act, when it is necessary to collect the liability of stockholders, have full power and authority to demand of such stockholders the statutory liability, provided

for in Section 3998, Code of Laws of South Carolina, 1922, and upon failure of any stockholder to pay into his hands such liability, he is hereby invested with full power and authority to bring suit, either individually or collectively, against such stockholder, or stockholders, for the collection of such liability, and all funds received from said assessment by payment with or without suit shall be kept as a separate fund to be paid to the depositors solely. Said receiver shall receive as compensation for the collection of the stockholders' liability, two and one-half ($2\frac{1}{2}$) per cent. and in case same is placed in the hands of the attorney for collection by suit, or otherwise, an additional five per cent. may be paid to the attorney for his services, or so much as the Court may decide the attorney is entitled to." (Section 6.)

I do not agree with the Circuit Judge in the construction his Honor placed upon this Act. In the course of his discussion of the question, his Honor used this language: "I believe that the Court should take notice of the fact, that the General Assembly, by the passage of the Act of 1929, intended to reform, simplify and economize the procedure to be followed in the liquidation of insolvent banks. And with that aim in view, it sought to place the entire process of liquidation in the hands of one person."

I am unable to agree with this conclusion. In my opinion, if the Legislature had intended to take away from the depositors the common-law right to institute and maintain in their name an action against the stockholders of an insolvent bank to recover for their constitutional and statutory liability, the Legislature would have said so in clear language, and, according to my view, the Act contains no language which is susceptible of that construction. In this connection I call attention to the well-recognized rule that, unless the statute enacted expressly so states, or contains negative or exclusive terms, it will not be presumed that the Legislature intended to abrogate or change a recognized common-law right of action to enforce a fixed and recognized liability, such for in-

stance as the liability involved in the case at bar, named and fixed, not only by statutory enactment, but also by constitutional provision; and the following statements of the salutary rule apply with no more force to the question of liability, whether it arises by reason of the common law, constitutional provision, or statutory enactment, than to the remedy and right to institute and maintain an action against stockholders of an insolvent bank to recover on a recognized liability, fixed by constitutional provision, a fact with which we are dealing in this case.

"It is not to be presumed that the Legislature intended to abrogate or modify a rule of the common law by the enactment of a statute upon the same subject; it is rather to be presumed that no change in the common law was intended, unless the language employed clearly indicates such an intention. It has been said that statutes are not presumed to make any alterations in the common law further than is expressly declared, and that a statute, made in the affirmative without any negative expressed or implied, does not take away the common law." 25 R. C. L., 1054.

"Statutes are to be construed with reference to the principles of the common law in force at the time of their passage. * * * It naturally follows also that statutes are not to be understood as affecting any change in the common law beyond that which is expressed, or is necessarily implied from the language used." 36 Cyc., 1145.

"Every statute is to be construed with reference to the general system of laws of which it forms a part, and must therefore be interpreted in the light of the customary or unwritten law of other statutes on the same subject, and of the decisions of the Courts." 36 Cyc., 1144.

"When a statute which is evidently intended to make an innovation upon the common law is susceptible of more than one construction, it is not to be construed as altering the common law further than the language of the statute clearly and necessarily required. The general rule, as usually ex-

pressed, is that statutes in derogation to the common law are to be strictly construed." 25 R. C. L., 1056.

"Unless the purpose of a statute to change the common law appears by express language, or by necessary implication, * * * the common law will be held to remain unchanged." *Keister's Adm'r v. Keister's Ex'rs,* 123 Va., 157, 96 S. E., 315, 1 A. L. R., 439.

"Statutes, however, are not presumed to make any alteration in the common law, further or otherwise than the Act does expressly declare. Therefore, in all general matters, the law presumes the Act did not intend to make any alteration, for, if Parliament had had that design, they would have expressed it in the Act." Broom's L. M. (7th Ed.), 32, 33, cited with approval in *Millhiser Mfg. Co. v. Gallego Mills Co.,* 101 Va., 579, 44 S. E., 760, 1766.

"A statute in modification or derogation of the common law will not be presumed to alter it further than is expressly declared." *Kidd v. Bates,* 120 Ala., 79, 23 So., 735, 736, 41 L. R. A., 154, 74 Am. St. Rep., 17.

In this connection, I also call attention to the following cases : *Sims v. Brown,* 10 Kan. App., 261, 62 P., 713; *Mosler Safe Co. v. Guardian Trust Co.,* 208 N. Y., 524, 101 N. E., 786. The reasoning of the Court in construing the Acts involved in each of these cases, if applied to the Act involved in the case at bar, leads to the conclusion that the provisions of the 1929 Act, clothing the receiver with the authority to maintain, under certain conditions, an action to recover against stockholders of an insolvent bank their liability to the depositors, make the remedy provided for in the 1929 Act cumulative and not exclusive.

I am unable to agree with the contention that the statute in question is mandatory, and that the receiver is specifically directed and required to collect the liability in question. The language of the Act is not that he shall collect, but the language is that he shall have full power to do so, under certain conditions. Under the Act it is clear that the Legisla-

ture intended to give to the receiver full power and authority to institute suit, but the language of the Act certainly does not compel him to do so. In my opinion the statute is not mandatory, but is merely directory. In the language of the Act may be found affirmative words, but no negative or exclusive words.

"Whether a particular statute is mandatory or directory does not depend upon its form, but upon the intention of the Legislature, to be ascertained from a consideration of the entire Act, its nature, its object, and the consequences that would result from construing it one way or the other. In the application of subsidiary rules for the determination of the legislative intent in this respect there is no small confusion in the decisions, but the following rules have been recognized as established. A provision of course is mandatory which is declared by the statute itself to be so. When a particular provision of a statute relates to some immaterial matter, as to which compliance with the statute is a matter of convenience rather than substance, or where the directions of a statute are given merely with a view to the proper, orderly and prompt conduct of business, the provision may generally be regarded as directory." 36 Cyc., 1157.

"Affirmative words make a statute directory, and negative, or exclusive words, make it imperative." *Attorney General v. Baker,* 9 Rich. Eq., 521.

"In general, statutory provisions directing the mode of proceeding by public officers and intended to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties cannot be injuriously affected, are not regarded as mandatory, unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated.. Where the words are affirmative and relate to the manner or time in which power or jurisdiction vested in a public officer or body is to be exercised, and not to the limits of the

power or jurisdiction itself, they may be and often have been construed to be directory." 25 R. C. L., 769.

The liability of stockholders in an insolvent bank to the depositors is not a common law right, but is based on a provision of the Constitution of 1895; the statute enacted thereafter simply adopted the language of the constitution. The remedy for enforcing this right, as recognized by our Courts since the adoption of the Constitution, is a common law remedy, which right, in my opinion, cannot be taken away, except by specific act with clear intent. The 1929 Act created no new right, but simply undertook to give a new remedy for enforcing a pre-existing right, and the new remedy must be regarded as cumulative or additional for enforcing the pre-existing right. This is especially true in the absence of language showing an intent to the contrary.

"Where there is an existing right, and the statute gives only a new remedy, the new and former remedies are cumulative, and either remedy may be resorted to." *Barnett v. Vanmeter,* 7 Ind. App., 45, 33 N. E., 666, 669.

"A statute, instituting a new remedy for an existing right, does not take away a pre-existing remedy without express words or necessary implication." *Bergman v. Gay,* 79 Vt., 262, 265, 64 A., 1106, 1107.

"Repeals by implication are not favored in the law, especially with regard to previously existing remedies, whether by statute or common law as to which it is held that they will not be taken away without a negative expressed or clearly implied." *Goodrich v. Milwaukee,* 24 Wis., 422, 438.

"The rule is that if the statute gives a remedy in the affirmative, without containing any express or implied negative, for a matter which was actionable at common law, this does not take away the common-law remedy, but the party may still sue at common law as well as upon the statute. In such cases the statute remedy will be regarded as merely cumulative." *Hickman v. Kansas City,* 120 Mo., 110, 117, 25 S. W., 225, 226, 23 L. R. A., 658, 41 Am. St. Rep., 684.

"A new equitable remedy given by statute is, unless the statute provides otherwise, merely cumulative, and does not prevent a resort to other pre-existing equitable remedies." *Atchison Board of Education v. Scoville,* 13 Kan., 17.

"Where a statute providing a remedy does not create a new right, but merely provides a *new remedy for a pre-existing right,* it is ordinarily held that such remedy is *not exclusive but merely cumulative, whether the right is one previously enforceable at common law, or by virtue of some other statute, or constitutional provision,* and whether it was previously enforceable at law or in equity, and notwithstanding the *new* remedy may be preferable to or more efficient than the old." (Italics added.) 1 C. J., 990.

For the reasons herein stated, I think the exceptions should be sustained, the order appealed from reversed, and the demurrers overruled.